**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CONSTELLATION NEWENERGY INC., <br>    *Plaintiff,* <br><br>   v. <br><br> BROWN & BROWN GROUP INC., *et al.* <br>    *Defendants.* | Case No. 25-cv-1787-ABA |

**MEMORANDUM OPINION**

Plaintiff Constellation NewEnergy, Inc. ("Constellation") has sued Defendants Brown & Brown Group, Inc. ("Brown & Brown") and Direct Logistic Transport, LLC ("Direct Logistic") (collectively, the "Defendants") for breach of contract. Constellation alleges that Defendants failed to render payment for goods and services they contracted to purchase. Despite proper service, Defendants failed to respond to the Complaint, and Constellation moved for entry of default against both Defendants. Default was entered by the Clerk, and notice was sent to the Defendants on the same day. Constellation has now filed a motion for default judgment, which will be granted.

**I.   BACKGROUND[1]**

Constellation is an "energy company providing power . . . and energy management products and services for homes and businesses." ECF No. 1 ¶ 7. On April 21, 2023, Brown & Brown entered into an Electricity Supply Agreement ("ESA") with

---

[1] The Court accepts as true the well-pleaded allegations set forth in the complaint in considering a motion for default judgment, and "whether those allegations 'support the relief sought in th[e] action.'" *Parrish v. Leithman,* 733 F. Supp. 3d 371, 373 (D. Md. 2024) (quoting *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001)).

Constellation. ECF No. 14-2 at 1, 6.[2] "Pursuant to the ESA, Brown & Brown agreed to purchase and receive, and Constellation agreed to sell and supply, all of Brown & Brown's electricity requirements" for select facilities operated by Brown & Brown for dates and locations listed in the ESA. ECF No. 1 ¶ 9; ECF No. 14-2 at 10.

Brown & Brown also contracted for Constellation to supply certain equipment for Brown & Brown facilities through Constellation's EME Express Materials Program ("EME Agreements"), which would be installed by a third-party contractor. ECF No. 1 ¶ 10. The first EME Agreement was signed on April 21, 2023 for services valued at $746,500.50. ECF No. 14-3 at 4—5. The second was signed on July 19, 2023 for services valued at $743,620.44. ECF No. 14-4 at 4–5. The third was signed on August 10, 2023 for services valued at $552,167.94. ECF No. 14-5 at 4–5. Payments were due in monthly installments. ECF No. 1 ¶ 11; ECF Nos. 14-3 at 2 (¶ 5(a)), 14-4 at 2 (¶ 5(a)), & 14-5 at 2 (¶ 5(a)). Pursuant to these Agreements, Brown & Brown purchased vehicle lifts and stackers, cement materials for installation, heating and cooling equipment, security cameras, various audio-visual equipment, and kitchen appliances for its facilities. ECF Nos. 14-3 at 9, 14-4 at 9—10, 14-5 at 9.

Brown & Brown hired a third-party contractor to install the equipment as part of the EME Agreements. ECF Nos. 14-3 at 7—8, 14-4 at 7—8, & 14-5 at 7—8. Constellation released payment, totaling $1,537,247, to the third-party contractor upon completion of its work pursuant to those three EME Agreements. ECF No. 1 ¶ 11. Constellation also

---

[2] Although Constellation referred to its various exhibits in the Complaint, it did not actually file them until the Motion for Default Judgment. The Court will rely on the exhibits attached to the Motion for Default Judgment because they are referred to, and thus are incorporated into, in the complaint.

invoiced Brown & Brown for "the electricity and related services and the energy efficiency equipment sold and supplied to Brown & Brown pursuant to the ESA and the EME [Agreements]." *Id.* ¶ 14. Constellation alleges that Brown & Brown failed to make any payments owed under the agreements. *Id.*

Constellation wrote to Brown & Brown on June 21, 2024, informing it that the ESA was terminated. *Id.* ¶ 15. Through counsel, Constellation again wrote to Brown & Brown on November 8, 2024, demanding payment under the ESA and EME Agreements. *Id.* ¶ 16. "As of the date of the Complaint, Brown & Brown has failed to pay $2,065,029.02 for electricity and related services and energy efficiency equipment" pursuant to the ESA and EME Agreements it entered into with Constellation. *Id.* ¶ 17.

Direct Logistic entered into an EME Express Materials Program contract (the "Direct Logistic Contract") with Constellation on June 21, 2023 to service a single location, *id.* ¶ 18; ECF No. 14-8 at 1, 4—5, with kitchen appliances, various audio-visual equipment, Apple iPads, and security equipment, ECF No. 14-8 at 9. Under that contract, Direct Logistic hired a third-party contractor to provide and install this equipment at Direct Logistic's facility. ECF No. 1 ¶ 19; ECF No. 14-8 at 7—8. Upon completion of this work, "Constellation paid [c]ontractor a total of $395,834.00 for the supply and installation of the . . . equipment pursuant to the Direct Logistic Contract." ECF No. 1 ¶ 20. Per to the Contract and the attached Schedule of Materials, ECF No. 14-8 at 1, Direct Logistic agreed to pay Constellation $8,825.80 in 60 monthly installments, totaling $529,548.25. ECF No. 14-8 at 5. Constellation invoiced Direct Logistic for the equipment sold and supplied to it pursuant to the Contract, ECF No. 14-8 at 1 (¶ 1), but did not receive payment, ECF No. 1 ¶ 21.

On July 31, 2024, a final invoice for $529,548.00 was provided to Direct Logistic; "the total amount due and owing for the . . . equipment sold and supplied to Direct Logistic in accordance with the [Contract]. Direct Logistic failed to pay the invoice." *Id.* ¶ 22. Constellation wrote to Direct Logistic demanding payment of the outstanding amount. *Id.* ¶ 23. Constellation alleges that Direct Logistic has "failed to pay $529,548.00 for the energy efficiency equipment pursuant to the Direct Logistic Contract." *Id.* ¶ 24.

Plaintiff filed its case against Defendants on June 5, 2025. ECF No. 1 at 11. On June 17, 2025, Eric Brown accepted service for both Defendants. ECF Nos. 7 & 8. Therefore, Defendants' deadline to file responsive pleadings was July 8, 2025. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). On August 11, 2025, Plaintiff filed a motion for Clerk's entry of default. ECF No. 9. Default was entered on August 13, 2025, and notices of default were sent on the same day. ECF Nos. 10–13. Defendants had until September 12, 2025 to file any motion to vacate default. ECF Nos. 11 & 13. Defendants have not filed any motions or other pleadings in this case. Constellation filed its motion for default judgment on December 10, 2025. ECF No. 14.

In support of its motion, Constellation submitted an affidavit by Niyati Mehta, a senior analyst of credit risk for Constellation attesting to the specifics of the contracts with Brown & Brown and Direct Logistic, respectively. ECF No. 14-1 ¶¶ 1, 4, 9. The affidavit also attested to the use of demand letters as an attempt to compel Defendants' payment of the amounts due, *id.* ¶¶ 7, 11, and that Defendants have not paid the outstanding amounts, *id.* ¶¶ 8, 12. Constellation also filed the ESA with Brown & Brown, ECF No. 14-2, the three EME Agreements with Brown & Brown, ECF Nos. 14-3, 14-4 & 14-5, the Direct Logistic Contract, ECF No. 14-8, demand letters sent by counsel to the

Defendants, ECF Nos. 14-6 & 14-9, and spreadsheets establishing the specific amounts due, ECF Nos. 14-7 & 14-10.

## II.    STANDARD OF REVIEW

"When a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Constellation has moved for default judgment under Rule 55(b)(2). In considering such motion, the court must accept well-pleaded allegations set forth in the complaint as true and must ascertain "whether the allegations 'support the relief sought.'" *Parrish,* 733 F. Supp. 3d at 373 (quoting *Ryan,* 253 F.3d at 780).

"[D]efault judgment 'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.,* 919 F. Supp. 2d 680, 684 (D. Md. 2013) (quoting *S.E.C. v. Lawbaugh,* 359 F. Supp. 2d 418, 421 (D. Md. 2005)). If default judgment is warranted, the Court must then "make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Parrish,* 733 F. Supp. 3d. at 373–74 (quoting *Int'l Painters,* 919 F. Supp. 2d at 684) (internal quotation omitted). The movant "bears the burden of establishing entitlement to recovery." *Id.* at 374 (citing *United States v. Nazarian,* Case No. 10-cv-2962-DKC, 2012 WL 2045944, at *3 (D. Md. June 5, 2012)).

## III.    DISCUSSION

### A.    Breach of Contract

Default judgment is "warranted if the . . . complaint adequately pleads a breach of contract claim." *Concentric Methods, LLC v. Cillian Tech., LLC,* Case No. 11-cv-1130-DKC, 2011 WL 6180143, at *1 (D. Md. Dec. 12, 2011). A complaint alleging breach of

contract, under Maryland law, "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant." *Decohen v. Cap. One, N.A.*, 703 F.3d 216, 227 (4th Cir. 2012) (quoting *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 655 (2010)) (internal quotations omitted, emphasis in original).

To sustain a breach of contract claim, a plaintiff "must establish that (1) the parties entered into a contract; (2) [the defendant] breached the contract; and (3) damages." *Nurse Next Door Home Healthcare Servs. (USA), Inc. v. Four Gloves, Inc.*, Case No. 18-cv-02101-PX, 2019 WL 2617556, at *2 (D. Md. June 26, 2019); *see also Frosted Apple, LLC v. Coastal Lab'ys, Inc.*, 757 F. Supp. 3d 636, 641 (D. Md. 2024) (granting default judgment after the plaintiff made a showing that it entered into a contract with the defendant, which the defendant failed to pay by the agreed-upon date).

### 1.    The Brown & Brown Contracts

There were contractual obligations between Constellation and Brown & Brown. The ESA and EME Agreements demonstrate that, in all cases, Brown & Brown signed for and agreed to the terms of those agreements through its Manager and President, Eric Brown. ECF Nos. 14-2 at 6, 14-3 at 4, 14-4 at 4, & 14-5 at 4. Furthermore, Eric Brown authorized the third-party contractor to supply each Brown & Brown location with the equipment, ECF Nos. 14-3 at 8, 14-4 at 8, & 14-5 at 8, and the third-party contractor's services were initially paid for by Constellation. ECF No. 1 ¶ 13. Brown & Brown breached its contractual obligations by non-payment for goods and services provided by Constellation, resulting in damages as evidenced in Constellation's account

records.[3] ECF No. 1 ¶¶ 30—31; ECF No. 14-7. Plaintiff has sufficiently alleged that Brown & Brown breached its contractual obligations to Constellation.

### 2. The Direct Logistic Contract

There was also a contractual obligation between Constellation and Direct Logistic. The Direct Logistic Contract demonstrates that Direct Logistic signed for and agreed to the Contract through its Manager, Eric Brown. ECF No. 14-8 at 4. Furthermore, Eric Brown authorized the third-party contractor to supply the Direct Logistic location with equipment pursuant to the Direct Logistic Contract, ECF No. 14-8 at 8, and the third-party contractor's services were initially paid for by Constellation. ECF No. 1 ¶ 19. Direct Logistic breached by failing to pay for the goods and services, resulting in damages as evidenced in Constellation's account statement. ECF No. 1 ¶¶ 37—38; ECF No. 14-10. Plaintiff has sufficiently alleged facts to establish that Direct Logistic breached its contractual obligations to Constellation.

### B. Damages

The Court must make an "independent determination . . . and cannot accept as true all factual allegations" made by parties in awarding damages following default judgment. *Int'l Painters,* 919 F. Supp. 2d at 684. The Court may determine damages "without a hearing so long as there is an adequate evidentiary basis in the record for the award." *Pandora Jewelry, LLC v. Anna's of Lakeland, LLC,* Case No. 24-cv-01301-JRR, 2024 WL 4284686, at *4 (D. Md. Sep. 25, 2024) (quoting *Chanel, Inc. v. Banks,* Case No. 09-cv-843-WDQ, 2011 WL 121700, at *4 (D. Md. Jan. 13, 2011)). Under Maryland

---

[3] In Constellation's account statement for Brown & Brown, it appears that payment may have been attempted by Brown & Brown approximately 20 times, but that each attempted payment was later returned or voided. ECF No. 14-7 at 1—3.

law, "a party suffering a breach of contract is entitled to recover as damages the amount that would place him in the position he would have been in had the contract not been broken." *Johnson v. Oroweat Foods* Co., 785 F.2d 503, 506 (4th Cir. 1986) (citing *Nat'l Micrographics Sys., Inc. v. OCE-Indus., Inc.,* 55 Md. App. 526, 532 (1983)). One way that can be sufficient to show damages is through declarations, correspondence and internal financial records. *See, e.g., Pandora Jewelry*, 2024 WL 4284686, at *4.

Here, Constellation filed an affidavit by a senior analyst of credit risk for Constellation, who attested to the specifics of the contracts, ECF No. 14-1 ¶¶ 1, 4, 9, and described the demand letters that were sent, *id.* ¶¶ 7, 11, and that Defendants have not paid the outstanding amounts. *Id.* ¶¶ 8, 12. It has filed the ESA with Brown & Brown, ECF No. 14-2, the three EME Agreements with Brown & Brown, ECF Nos. 14-3, 14-4, & 14-5, the Direct Logistic Contract, ECF No. 14-8, and spreadsheets detailing the amounts due. ECF Nos. 14-7 & 14-10. Constellation has met its burden of establishing entitlement to recovery for breach of contract, and the documentation is sufficient to support its claims for compensatory damages of $2,065,029.02 for Brown & Brown's breach of the ESA and the EME Agreements, ECF No. 1 ¶ 31, and $529,548.00 for Direct Logistic's breach of the Direct Logistic Contract. *Id.* ¶ 38.

Pursuant to the terms of the ESA, ECF No. 14-2 at 2, the EME Agreements, ECF Nos. 14-3 at 2 (¶ 5(a)), 14-4 at 2 (¶ 5(a)), 14-5 at 2 (¶ 5(a)), and the Direct Logistic Contract, ECF No. 14-8 at 2 (¶ 5(a)), Constellation has also sought pre-judgment interest. ECF No. 14 ¶ 11, 15. The Court may award pre-judgment interest on payments due to the plaintiff accruing on the date payment was due, up until an entry of default, *Pandora Jewelry,* 2024 WL 4284686, at *4, or an entry of final judgment, *Smith & Loveless, Inc. v. Maitland Bros. Co.,* Case No. 90-cv-2144-PVN, 1991 WL 124351, at *6—

8

7 (4th Cir. 1991). Such findings by the court end accrual of contractually obligated interest and begin the accrual of the statutory interest rate. *Id.*

The ESA provides that failure "to pay within twenty (20) days of the invoice date" results in liability for interest "which will accrue daily on outstanding amounts from the due date until the bill is paid in full at a rate of 1.50% per month." ECF No. 14-2 at 2. Based on the record provided with respect to the invoice amounts, it is unclear whether interest owed pursuant to the ESA Agreement is simple or compound and to which invoices "late payment charge[s]" were applied. ECF No. 14-2 at 7; ECF No. 14-7.

The EME Agreements and the Direct Logistic Contract provide that the "[c]ustomer shall pay [ ] invoices in accordance with the payment terms of Customer's [ESA] . . . or within 20 Business Days of the invoice date ("Payment Date")" in the absence of a corresponding ESA. ECF Nos. 14-3 at 2 (¶ 5(a)), 14-4 at 2 (¶ 5(a)), 14-5 at 2 (¶ 5(a)), 14-8 at 2 (¶ 5(a)). Unpaid invoices "accrue interest daily on outstanding amounts from the Payment Date until paid in full, at . . . 1.5% per month." *Id.* Based on the record, it is unclear whether interest owed pursuant to the EME Agreements and the Direct Logistic contract is simple or compound, and to which invoices interest (or "late payment charge[s]") were applied. ECF Nos. 14-7 & 14-10.

To recover pre-judgment interest, Constellation will need to file supplemental briefing specifying the amount of interest owed pursuant to the language of the agreements at issue. *See Equinor USA Onshore Prop. Inc. v. Pine Res., LLC*, 917 F. 3d 807, 817 n.4 (4th Cir. 2019) (ambiguous contracts are generally, but not automatically, construed against the drafter); *see also Mitchellville Plaza Bar LP v. Hanover Am. Ins. Co.*, Case No. 22-2089, 2024 WL 208149, at *2 (4th Cir. 2024). In its supplemental briefing, Constellation shall specify not only how much interest it is owed but also shall

identify whether it seeks compound or simple pre-judgment interest (and, if compound, the basis for such request).

Constellation also seeks attorneys' fees. A party seeking an award of attorneys' fees "bears the burden of proof and 'must provide detailed records that specify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Nolet v. APS Sol., Inc.,* Case No. 20-cv-70-GJH, 2021 WL 4502811, at *8 (D. Md. Sep. 30, 2021) (quoting *Osorio de Zavala v. Tortilleria El Volcan, LLC,* Case No. 17-cv-3093-CBD, 2019 WL 2366262, at *8 (D. Md. June 4, 2019)) (internal quotations omitted). Attorneys' fees are calculated using the lodestar method, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Where a plaintiff does not present evidence about expended costs or attorneys' fees in pursuit of its claims, the court may, at its discretion, "grant [p]laintiff leave of court to file a motion seeking attorney[s'] fees and costs." *Joe Hand Promotions, Inc. v. Hanaro Bethesda, Inc.,* Case No. 11-cv-191-WGC, 2012 WL 2366378, at *8 & n.7 (D. Md. June 12, 2012).

Pursuant to the terms of the ESA, ECF No. 14-2 at 8—9 (¶ 4), the EME Agreements, ECF Nos. 14-3 at 2 (¶ 5(a)), 14-4 at 2 (¶ 5(a)), 14-5 at 2 (¶ 5(a)), and the Direct Logistic Contract, ECF No. 14-8 at 2 (¶ 5(a)), Constellation sought recovery of attorneys' fees in the Complaint. ECF No. 1 ¶ 43. In its Motion for Default Judgment, however, Constellation did not request attorneys' fees, or submit affidavits or supporting documentation representing payments to counsel. Should Constellation seek to recover attorneys' fees and costs, Constellation will need to file a petition for fees.

Finally, Plaintiff seeks post-judgment interest on the compensatory damages. This request will be granted, and interest will be calculated pursuant to 28 U.S.C. § 1961.

## IV.    CONCLUSION

For these reasons, the motion for default judgment (ECF No. 14) is granted in part and reserved in part. Defendants are liable to Constellation for breach of contract and thus for compensatory damages. The Court will grant Constellation leave to file supplemental briefing regarding pre-judgment interest as well as to file a petition for attorneys' fees and costs. A separate order follows.

Date:  April 23, 2026                                          _____/s/_____
                                                                            Adam B. Abelson
                                                                            United States District Judge

11